**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SEBASTIAN GHILES; JOHN DANIEL; JR.; JASON AMOS; and ANGELA MATTIO, | ) ) ) | |
| | ) | Case No. 19-cv-1775 |
| Plaintiffs, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| MUNCIPAL ELECTORAL BOARD/COMMISSIONERS OF CHICAGO HEIGHTS, ILLINOIS; DAVID GONZALEZ; LORI WILCOX; WANDA ROGERS; VINCENT ZARANTI; DENNIS GILANOPOLUS; TOMAS SOMER; MICHAEL STEBEL; RUBEN REYNOSO; RICARDO CASTANEDA II; SHEILA FREEMAN; NATHAN DAVID; ERICA HUNTER; THE ILLINOIS BOARD OF ELECTIONS; KAREN YARBROUGH; and RACHEL VEGA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM) OPINION AND ORDER

Pro se Plaintiffs Sebastian Ghiles,[1] John Daniel, Jr., Jason Amos, and Angela Mattio ("Plaintiffs") bring suit against the Municipal Electoral Board/Commissioners of the City of Chicago Heights, Illinois and various municipal, county, and state officials and entities for alleged violations of the Due Process and Equal Protection Clauses of the United States Constitution and the Voting Rights Act ("VRA") arising out of the City of Chicago Heights' local elections in April 2019. Currently before the Court are Defendants' motions to dismiss for lack of jurisdiction and failure to state a claim, [11], [18], [37], and [40]. For the following reasons, motions [11], [18],

---

[1] Ghiles has been advised that, as a pro se litigant, he can only represent himself and may not file a brief on behalf of any other litigant. See [56].

and [37] are granted and motion [40] is granted in part and denied in part. By March 24, 2020, the parties shall file supplemental briefs addressing the questions below concerning whether Gonzalez, Vega, Wilcox, and Somer are entitled to qualified immunity on Ghiles' and Daniel's equal protection claim to the extent that claim is based on the rejection of Ghiles' and Daniel's objections to candidates in the April 2019 election. All other parties and claims are dismissed. This case will be set for status hearing after the Court receives the parties' supplemental briefs. No answers to the complaint will be required until further order of the Court.

## I.    Background[2]

Plaintiffs are residents of the City of Chicago Heights ("City"). Their complaint arises out of alleged corruption in the City's municipal elections, and in particular in the lead-up to the April 2, 2019 election. Ghiles ran as a candidate for mayor but, for reasons explained below, was removed from the ballot after objections were filed to his candidacy. Daniel ran as a candidate for Alderman of the 7th Ward, but also was removed from the ballot based on objections. Amos and Mattio are not specifically identified in the complaint, but Ghiles' responses to the motions to dismiss explain that Amos was a candidate for Alderman for the 4th Ward in the April 2019 election, while Mattio ran as a write-in candidate for mayor. See [55] at 10.

Defendants fall into four categories. The first, which the Court will refer to as the "City Defendants," is composed of Mayor David Gonzalez; Clerk Lori Wilcox; Deputy Clerk Rachel Vega; Alderpersons Wanda Rogers and Vincent Zaranti; and the attorney for the City's Municipal Electoral Board/Commissioners, Dennis Gilanopolus. According to the complaint, all of the City Defendants are members of the "Unity Party," which was created by the merging of local Republicans and Democrats. Gonzalez, Rogers, Zaranti, and Wilcox are also members of the

---

[2] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiffs' complaint [1]. See *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

City's Electoral Board. Vega was appointed by and, according to the complaint, is controlled by, Gonzalez. See [1] at 3. The second group of Defendants is composed of individuals who objected to Ghiles' and Daniel's candidacies in the April 2019 election, and includes Michael Stebel, Ruben Reynoso, Ricardo Castaneda II, Sheila Freeman, Nathan Davis, and Erica Hunter (the "Objectors"). Defendants also bring suit against the Cook County Clerk, Karen Yarbrough, and the Illinois Board of Elections.

On December 3, 2018—the last day for the Clerk's office to accept objections to candidates for the April 2019 election—Ghiles and Daniel appeared in the Clerk's Office around 4:30 p.m. to present Ghiles' objections to Gonzalez's candidacy for Mayor and Wilcox's candidacy for City Clerk, as well as Daniel's objection to Kelli Merrick's candidacy for Alderman of the 7th Ward. See [1] at 6. Wilcox saw Ghiles and Daniel but, when Daniel spoke to her, she avoided acknowledging the two men and did not come to the counter to help them. *Id.* at 7. A few minutes later, Vega came to the counter and inquired if she could help. *Id.* Ghiles and Daniel stated that they were there to file objections. Ghiles put his objection on the counter. Vega looked at it and "said that she would not accept Ghiles' and Daniel's objections." *Id.* Another individual, Denise Manual, was between Ghiles and Daniel in line. Vega rejected her objection, too, but after Manual called her attorney, Vega accepted Manual's objection. Vega summoned Somer, who informed Ghiles and Daniel that "whatever Ms. Vega said goes." *Id.* at 8. The next day, December 4, 2018, Vega accepted a late-filed objection from "Mr. Wiggins" to 4th Ward Alderman and mayoral candidate Joshua Deabel. *Id.*

Subsequently, the City's Electoral Board convened hearings to consider challenges to candidates for the April 2019 election. According to the complaint, "the Board made sure that only the Unity Party people spoke freely" at the hearings, even though the Board's rules allowed

candidates 15 minutes to speak. [1] at 10. The Board also "made sure all non-Unity Party people were challenged and there was no audience participation in violation of the Open Meeting Act." *Id*. The Board ruled that Ghiles, Daniel, and Deabel would not be on the ballot for the April 2019 election. The Board rejected Daniel's petition to be put on the ballot on the basis that it left out or misspelled his name. See *id.* at 8. Yet, the Board voted to remove Deabel from the ballot based on a late-filed objection that misspelled Deabel's name. See *id.* at 8-9. The Cook County Circuit Court and the Illinois Appellate Court upheld the Board's decision to keep Ghiles, Daniel, and Deabel off the ballot. *Id.* at 8.

The complaint also makes a number of allegations concerning corruption in the City's election process and the City more generally. For instance, Plaintiffs allege that after Gonzalez took office in 2015, he and other Unity Party officeholders voted to raise the Mayor's salary from $25,000 per year to $40,000 per year, but then lowered the salary to only $1,000 per year in 2018 to discourage challengers in the 2019 election. Plaintiffs also allege that on voting days, polling places in the City are monitored only by members of the Unity Party (with four members of the unity party as election judges) and their supporters (including observers and City police), even though state law requires election judges to come "from the two major political parties." [1] at 6, 11. Plaintiffs further allege on information and belief that "dead people voted in Chicago Heights in 2015 in order to defeat … Daniel for Alderman who officially lost by one vote," *id.* at 3; and that Gonzalez's administration allowed library employees to give library cards to non-residents of the City in order to allow them to vote in the City's elections, *id.* at 4. Moreover, according to the complaint, Gonzalez's administration "routinely obtains homes by forcing property owners to walk away from their properties due to excessive code violations and turning water off for late payment of garbage or water billing then evicting the residents because they are without running

water," with the City later "tak[ing] ownership of the propert[ies] and sell[ing] them to [Unity Party] supporters for one Dollar." *Id.* at 4. Unity Party officeholders in the City also allegedly gave raises of between $32,000 and $64,000 to Unity Party police officers, without the knowledge of taxpayers or the one non-Unity Party Alderperson in the City. *Id.*

Plaintiffs request that the Court order the following relief:

1. For the court to conduct an evidentiary hearing to hear from both candidates and citizens living under Unity Party [tyranny] in Chicago Heights. And allow the petitioners to introduce additional evidence to substantiate our claims.

2. Allow all challengers and write in candidates forced off the ballot or those who chose to be write-in because they didn't have the money to go into court to fight to have their names place[d] on the ballot.

3. Have all candidates challenged submit written affidavits to the court outlining how both the Chicago Heights Electoral Board and/or the Cook County Court discriminated them against.

4. Place an injunction on the [then-]upcoming April 2, 2019 general election for the city of Chicago Heights until this honorable court orders ... that adequate safeguards are in place to ensure a free and fair election.

5. Appoint a special council at the expense of City of Chicago Heights to investigate the claims outline in this complaint and provide recommendations to ensure that our voting and constitutional rights are protected.

6. Award the plaintiffs damages and reimbursement of all legal fees, cost based upon the severity of the abuses, of each respondents and violations of our rights[.]

[1] at 13.

Currently before the Court are the motions to dismiss filed by the four groups of Defendants.

## II.     Legal Standard

Defendants move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' 12(b)(1) arguments are premised on Plaintiffs' alleged lack of standing to bring this lawsuit. A motion to dismiss for lack of standing is a

challenge to the court's subject matter jurisdiction under Rule 12(b)(1). See *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). In considering a motion under Rule 12(b)(1), the Court "accept[s] as true all well-pleaded factual allegations and draw[s] reasonable inferences in favor of the plaintiff[]." *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). Allegations made in response to a motion to dismiss may be considered in assessing whether standing exists. See *Gould v. Schneider*, 448 Fed. Appx. 615, 618 (7th Cir. 2011).

Defendants' 12(b)(6) arguments attack the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). It is also proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)); see also Fed. R. Civ. P. 10(c). Further, although it is well established that a "complaint may not be amended by the briefs in opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), the Court may "consider additional facts set forth in" a brief

opposing dismissal "so long as those facts 'are consistent with the pleadings.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quoting *Geinosky*, 675 F.3d at 745 n. 1); see also *In re Dealer Management Systems Antitrust Litigation*, 313 F. Supp. 3d 931, 938–39 (N.D. Ill. 2018) (same); *Jones v. Sparta Cmty. Hosp.*, 716 Fed. Appx. 547, 547 (7th Cir. 2018) ("because [plaintiff-appellant] now elaborates on the factual allegations in his amended complaint, and his elaborations are consistent with the pleadings, we consider that information in our review"); *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) ("Materials or elaborations in appellants' brief opposing dismissal may be considered, so long as those materials or elaborations are consistent with the pleadings."  (internal quotation marks and citation omitted)).

Finally, because Plaintiffs are proceeding pro se, their complaint must be construed liberally.  See *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) ("'[a] document filed pro se is to be liberally construed, ... and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'"  (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam))).

## III.    Analysis

Before turning to the arguments raised in Defendants' motions to dismiss, a bit of legal background is in order.  Plaintiffs allege claims for violation of the Voting Rights Act ("VRA"), the Equal Protection Clause, and the Due Process Clause.  The Court construes the two constitutional claims as being brought pursuant to 42 U.S.C. § 1983.  "Suits under § 1983 are meant to deter state actors from using the 'color of state law' to deprive individuals of rights guaranteed by the Constitution." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015) (quoting *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)).  "'Section 1983 'is not itself a source

of substantive rights, but merely provides a method of vindicating federal rights elsewhere conferred.'" *Garcia v. Hudak*, 156 F. Supp. 3d 907, 912 (N.D. Ill. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion)). In order to bring a claim under Section 1983, "the plaintiff must show two elements: (1) the party against whom the claim is brought qualifies as a person acting under the color of state law; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Tom Beu Xiong*, 787 F.3d at 397 (internal quotation marks and citation omitted).

In Illinois, the statute of limitations for claims brought under Section 1983 is two years. See *Woods v. Illinois Dep't of Children & Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013) (explaining that "this court has consistently held that the limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13–202"). Therefore, to the extent that Plaintiffs have made allegations concerning events that occurred more than two years prior to the filing of their complaint, those allegations cannot form the basis of a Section 1983 claim.

Plaintiffs also allege generally that all of the Defendants have engaged in a conspiracy to deprive voters in the City of the full range of choice of candidates by removing non-Unity Party members from the ballot and rejecting objections to Unity Party candidates. While 42 U.S.C. § 1985(3) provides a cause of action against persons who have conspired to deny any person the equal protection of the laws, the Seventh Circuit has held that this provision "does not reach nonracial political conspiracies." *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985). Since Plaintiffs' claim is that they were treated in a discriminatory manner due to their political status as non-members of the Unity Party—not due to "racial, class-based animus," *id*.—Plaintiffs have not alleged a viable claim under Section 1985(3). The Court now turns to the parties' motions.

## A. Injunctive Relief

Multiple Defendants move to dismiss Plaintiffs' claim for injunctive relief. The Court agrees with Defendants that the injunction Plaintiffs seek—halting the April 2, 2019 general election until adequate safeguards are in place to ensure a free and fair election, see [1] at 13—is moot. Since the election has already passed, it would be impossible for the Court to grant this relief. See *Stone v. Board of Election Comm'rs for City of Chicago*, 643 F.3d 543, 544-45 (7th Cir. 2011) (passing of mayoral election date rendered moot citizens' claim on appeal that they were entitled to preliminary injunction prohibiting city Board of Election Commissioners from enforcing requirement that mayoral candidates obtain 12,500 signatures from registered voters to become ballot-eligible, since injunction would no longer affect citizens' rights; explaining that "[i]f an event occurs during appeal that eliminates the court's power to provide relief, the appeal is moot"). "Perhaps if Plaintiffs had sought an injunction forcing a new election, we would have jurisdiction." *Id.* (citing *Stewart v. Taylor,* 104 F.3d 965, 970 (7th Cir.1997)). But "Plaintiffs seek no such remedy, and the injunction they do seek could no longer affect the litigants' rights." *Id.* Plaintiffs are free to file a motion for leave to amend the complaint if they wish to modify their request for injunctive relief and believe they can do so consistent with this opinion and Rule 11. See Fed. R. Civ. P. 11.

## B. Illinois State Board of Elections

The Illinois State Board of Elections moves to dismiss Plaintiffs' complaint on the basis that the Eleventh Amendment to the United States Constitution bars suit against it. See [11]. Ghiles' response does not address this argument. See [32].

The Eleventh Amendment generally immunizes states and state officials from suit. *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018). The Eleventh Amendment also applies to state

agencies. See *Council 31 of the Am. Federation of State, County & Municipal Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012); *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). The Illinois State Board of Elections is an agency of the State of Illinois, and therefore immune from suit in federal court unless an exception to the Eleventh Amendment bar applies.

"*Ex parte Young* recognized what has become one of several well-established exceptions to the Eleventh Amendment bar on suing states in federal court, permitting private citizens to sue state officials in their official capacities to require them to comply with federal law on an ongoing basis." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013). "'In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* at 1051 (quoting *Verizon Maryland Inc. v. Pub. Svc. Comm'n of Maryland*, 535 U.S. 635, 645 (1997)). The *Ex parte Young* exception does not apply under the facts alleged in the complaint. Though the complaint names the Board in the caption, it is devoid of allegations concerning how the Board or any of its officials violated federal law. Further, the complaint does not name a state official in his or her official capacity; it simply names the Board itself.

The Court can discern no other exceptions to the Eleventh Amendment bar that might apply under the facts alleged in the complaint, such as consent by the State to be sued, or abrogation by Congress of the states' traditional immunity. See *de Lima Silva v. Dep't of Corrections*, 917 F.3d 546, 565 (7th Cir. 2019); *Aku v. Chicago Bd. of Ed.*, 290 F. Supp. 3d 852, 864 (N.D. Ill. 2017). Therefore, the Illinois State Board of Elections' motion to dismiss [11] is granted.

## C.    Karen Yarbrough

Cook County Clerk Yarbrough moves to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim. According to Yarbrough, Plaintiff's "apparent sole allegation against [her] was that she was forced to eliminate Chicago Heights' early voting privileges" in 2011 "because of complaints of vote buying, electioneering, *etc*." [18] at 1.

The Court agrees that this allegation fails to state a claim against Yarbrough. It does not suggest that Yarbrough did anything wrong, and even if it did, it concerns events well outside the two-year statute of limitations for bringing a claim under Section 1983. See *Woods*, 710 F.3d at 766. To the extent that Ghiles wants to pursue a claim against Yarbrough under the VRA, that is not a viable claim because, as explained below, Ghiles does not allege that any of the actions taken against him were due to his race.

The Court notes that the complaint makes one other mention of Yarbrough, citing to Exhibit M, a letter from Ghiles to Yarborough "challenging the Chicago Heights Election commission not submitting all 82 pages of the non Unity Party candidates petitions for binder check review." [1] at 11. The attached letter shows that Ghiles complained that even though he submitted 82 pages of signatures to Yarbrough, "the Cook County Board of Election only included [20 pages] in making the determination [whether] I have enough good signatures to remain on the ballot." *Id*. at 45. The letter accuses the Cook County Board of Election, not Yarbrough, of wrongdoing. Further, Ghiles' claims concerning his removal from the ballot are barred by res judicata, as explained below. Therefore, Yarbrough's motion to dismiss [18] is granted.[3]

---

[3] Yarbrough also argues that she should be dismissed from this matter because she is entitled to absolute immunity from damages under the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq*., for actions related to her official duties. The Court finds it unnecessary to analyze this argument, other than to note that the Tort Immunity Act does not apply to claims alleging a violation of the United States Constitution. *Collins v. Board of Educ. of North Chicago Community Unit School Dist. 187*, 792 F. Supp. 2d 992, 999 (N.D. Ill. 2011); see also *Horwitz v. Bd. of Educ. of Avoca Sch.*

**D. Michael Stebel, Ruben Reynoso, Ricardo Castaneda II, Sheila Freeman, Nathan Davis and Erica Hunter**

The Objectors move to dismiss the complaint on the basis that it "is completely devoid of any facts that support an inference that the Individual Respondents engaged in any misconduct or were the cause of any alleged injuries." [37] at 3. According to the Objectors, the sole reference to them in the complaint is that the state court that reviewed Ghiles' challenge to being taken off the ballot for mayor "was silent on all of the City Clerk errors (the Clerk's office chose to correct the objector's Filings) of Chicago Heights and the standing of the objectors: Michael A. Stebel; Ruben Reynoso; Ricardo Castweda (sic) + Sheila Freeman; and Nathan Davis + Erica Hunter. Why are they objecting to people they don't know and who paid their attorneys?" *Id.* at 2.

The Court disagrees that the complaint is devoid of facts concerning the Objectors' alleged misconduct. The portion of the complaint quoted by the Objectors implies that the Mayor and/or other City officeholders in the Unity Party encouraged or directed the objectors to file objections in order to keep non-Unity Party members off the ballot. Plaintiffs also attach to the complaint a letter that they sent to various federal, state, and county officials, which avers that Gonzalez "used people working under the city contractor with the city and other people who make money of[f] the tax payers to challenge the nominations of Non-Unity Party candidates," even though the objectors "do not even know the people they are challenging." [1] at 36-37.

Private individuals like objectors may be considered "state actors" for purposes of bringing a Section 1983 claim where there is a sufficiently close nexus between the state and the private conduct that the action "'may be fairly treated as that of the State itself.'" *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The required

_____

*Dist. No. 37,* 260 F.3d 602, 617-18 (7th Cir. 2001) (holding that defendant school board and individual defendants were immune from a teacher's defamation claims under the Tort Immunity Act but proceeding to address First Amendment claim on the merits).

nexus may be satisfied in two situations: where the state effectively directs, controls, or encourages the actions of a private part; and where a private party is performing functions that are "'traditionally the exclusive prerogative of the State.'" *Id.* (quoting *Jackson v. Metro. Edison Co*., 419 U.S. 345, 353 (1974)). The complaint's allegations suggest that the objectors should be considered state actors because Gonzalez and his fellow Unity Party members allegedly directed and/or encouraged the objectors to file their objections.

Nonetheless, the Court grants the Objectors' motion to dismiss [37] because Ghiles' and Daniel's claims are barred by res judicata to the extent they are based on Ghiles' and Daniel's removal from the ballot for the April 2019 election, as explained below. Further, the Court notes that Plaintiffs have not established that there is any legal requirement that objectors know the candidates to whom they are objecting or any legal prohibition on objectors coordinating with other candidates.

### E. David Gonzalez, Lori Wilcox, Wanda Rogers, Vincent Zaranti, Dennis Gilanopolus, Thomas Somer, and Rachel Vega

#### 1. Standing

The City Defendants argue that Amos and Mattio do not have standing to bring this lawsuit because "generalized grievances" concerning the operation of the local government do not establish Article III standing. See [40] at 5. The Court finds it unnecessary to address standing, because the complaint does not contain sufficient allegations to support any claims by Amos and Mattio. Plaintiffs assert a violation of the VRA, but that claim must be dismissed because the complaint does not allege that any of the Defendants took any action against them on account of their race, as explained below. Amos and Mattio also assert claims for violation of due process and equal protection, but the complaint does not support such claims. Unlike Ghiles and Daniel, both Amos and Mattio were on the ballot for the April 2019 election, and neither alleges to have

been denied the ability to file objections to other candidates. There is no suggestion that Amos or Mattio were denied any process to which they were due, or denied the equal protection of the law. Therefore, Amos and Mattio are dismissed as Plaintiffs.

The City Defendants also argue that Ghiles and Daniel do not have standing to assert either a due process or an equal protection claim because "it is unclear what or which of [their] injuries, if any, could be redressed by a favorable decision in this case." [40] at 7. The City Defendants rely on *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983), in support of their position. See [40] at 7. However, *Lyons* concerned whether a plaintiff had standing to pursue *injunctive* relief—not damages—and in fact presumed that the plaintiff had "standing to claim damages" against the City and its officers for using an illegal choke hold on him. 461 U.S. at 105. Plaintiffs in this case seek monetary damages, as well. See [1] at 13. At the very least, "[a] plaintiff who has been deprived of a constitutional right is entitled to nominal damages, … even absent actual damages." *Peterson v. Village of Downers Grove*, 150 F. Supp. 3d 910, 925-26 (N.D. Ill. 2015) (citing *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992)); see also *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018) (explaining that when a state or local government violates its obligations to provide plaintiff with procedural due process, § 1983 "may authorize an award of damages against the government and/or its officers," including "compensation for intangible emotional harm and even nominal damages where no actual injury occurs"). Therefore, the City Defendants have failed to demonstrate that Ghiles and Daniel lack standing to pursue their constitutional claims.

### 2. Voting Rights Act Claim

The City Defendants move to dismiss Plaintiffs' VRA claim on several bases, including that Plaintiffs fail to state a claim because they "do not bring suit alleging they were denied the right to vote on account of their race, color, or language spoken." [40] at 6.

Section 2 of the VRA provides that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote *on account of race or color*." 52 U.S.C. § 10301(a) (emphasis added) (formerly cited as 42 U.S.C. § 1973); see also *Thornburg v. Gingles*, 478 U.S. 30, 42 (1986); United States Department of Justice, Section 2 of the Voting Rights Act, available at https://www.justice.gov/crt/section-2-voting-rights-act (last visited Feb. 12, 2020) (explaining that "Section 2 of the Voting Rights Act of 1965 prohibits voting practices or procedures that discriminate on the basis of race, color, or membership in one of the language minority groups identified in Section 4(f)(2) of the Act").

In this case, Plaintiffs do not contend (either in their complaint or Ghiles' responses to Defendants' motions to dismiss) that Defendants engaged in any of the misdeeds alleged in the complaint because of Plaintiffs' race, color, or spoken language. Instead, Plaintiffs argue that they were treated differently and unfairly due to their status as non-members of the controlling Unity Party. Plaintiff has not identified, and the Court has been unable to find, any case in which the VRA has been interpreted to apply to such claims. See, e.g., *Gould v. Schneider*, 448 Fed. Appx. 615, 617 (7th Cir. 2011) (affirming magistrate judge and district judge's decision that state statute allowing any voter to file a petition with the Illinois State Board of Elections objecting to a candidate's nomination papers did not violate the VRA, because the state statute "neither prevents anyone from voting nor keeps a potential candidate off the ballot because of race or color"); *McGee v. City of Warrensville Heights*, 16 F. Supp. 2d 837, 844 n.6 (N.D. Ohio 1998) (rejecting VRA claim that "allege[d] denial or abridgement of the right to vote on account of sex," because "gender

is not a predicate to Section 2 liability under" the VRA). Therefore, Plaintiffs' complaint is dismissed to the extent it is premised on the VRA.

### 3. *Res Judicata*

The City Defendants argue that all of Ghiles' and Daniel's claims should be dismissed pursuant to the doctrine of *res judicata*. Res judicata is an affirmative defense that, when disclosed by the allegations of the complaint, "provides a proper basis for a Rule 12(b)(6) motion." *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). The City Defendants bear the burden of proof on their affirmative defense. *United States ex rel. Lisitza v. Par Pharmaceutical Cos.*, 62 F. Supp. 3d 743, 749–50 (N.D. Ill. 2014). "To determine whether res judicata applies, we apply the preclusion law of Illinois, the state that rendered the judgment" affirming the removal of Ghiles and Daniel from the ballot based on objections. *Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011); see also *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996).

Illinois' "'doctrine of res judicata provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.'" *Arlin-Golf*, 631 F.3d at 821 (quoting *Nowak v. St. Rita High School*, 757 N.E.2d 471, 477 (Ill. Sup. 2001)). "'When res judicata is established as a bar against the prosecution of a second action between the same parties upon the same claim or demand it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose.'" *Id*. "Res judicata applies when '(1) there was a final judgment on the merits rendered by a court of competent

jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies.'" *Id.*

The City Defendants argue that Ghiles and Daniel have pled themselves out of court based on res judicata by alleging that "'the Circuit Court and [t]he Appellate Court upheld the Chicago Heights Electoral Board decision' to remove Ghiles and Daniel from the 2019 election ballot." [40] at 10 (quoting [1] at 8). The City Defendants assert that Plaintiffs "presumably brought the same claims to these courts as they have set forth in this instant case," and therefore have admitted all of the elements of res judicata. *Id.*

The Court agrees that res judicata bars Ghiles' and Daniel's claims to the extent they are based on the allegation that they were improperly removed from the ballot for the April 2019 election. The complaint admits that Ghiles and Daniel sought review of the City Electoral Board's decision in the Cook County Circuit Court, which upheld the Board's decision, and then appealed to the Illinois Appellate Court, which affirmed. However, the City Defendants have not demonstrated that res judicata applies to Ghiles' and Daniel's claims to the extent they are based on other actions taken by the City Defendants, including most notably the refusal to accept Ghiles' and Daniel's objections to other candidates. Plaintiffs do not admit, and the City Defendants have made no attempt to demonstrate, that such a claim was or could have been brought in Ghiles' and Daniel's challenges to their own removals from the ballot.

### 4. Due Process

In assessing Ghiles' and Daniel's due process claim, the Court limits its focus to the allegations that Ghiles and Daniel were not allowed to file objections to the candidacies of Gonzalez, Wilcox, and Merrick. In particular, Ghiles and Daniel allege that when they went to file their objections on the last day objections were being accepted, Wilcox intentionally avoided

coming to the counter to serve them, Vega told them that she would not accept their objections, and Somer told them that "whatever Ms. Vega says goes." [1] at 6-8. The complaint also alleges that Vega was appointed by and is controlled by Gonzalez.

The City Defendants' argument for dismissal of Plaintiffs' due process claim does not address these factual allegations. Instead, the City Defendants focus on allegations that "the Electoral Board was biased in favor of Unity Party Candidates." [40] at 8. They assert that this is insufficient to state a claim for violation of procedural due process, because state law already provides an adequate remedy—judicial review of the Electoral Board's decision. *Id.* (citing *Towns v. Cowen*, 786 F. Supp. 699, 702 (N.D. Ill. 1992); *Ryan v. Landek*, 512 N.E.2d 1, 2 (Ill. App. 1987)). Assuming this is a correct statement of the law, it does not provide a basis for dismissing the due process claim to the extent it is based on Vega's rejection of Ghiles' and Daniel's objections to other candidates. There is no suggestion from the complaint or the City Defendants' motion that Vega's actions were (or could have been) reviewed by the Electoral Board, the Cook County Circuit Court, or the Illinois Appellate Court.

The City Defendants also argue that even if they did violate Ghiles' or Daniel's constitutional rights, they are entitled to qualified immunity. "The determination of whether an official is entitled to qualified immunity proceeds in two steps." *Pyka v. Village of Orland Park*, 906 F. Supp. 1196, 1216 (N.D. Ill. 1995). "The defendant must first show that he or she was acting within the scope of discretionary authority at the time of the alleged conduct." *Id.*; see also *Coleman v. Frantz*, 754 F.2d 719, 728 (7th Cir. 1985) (declining to apply discretionary/ministerial distinction to qualified immunity analysis but opining that "[i]t does seem reasonable, however, to require that a lower level public official such as a sheriff demonstrate that, based on objective circumstances at the time he acted, his actions were undertaken pursuant to the performance of his

18

duties and within the scope of his authority"), *receded from on other grounds*, *Benson v. Allphin*, 786 F.2d 268 (7th Cir. 1986); *Mearday v. City of Chicago*, 196 F. Supp. 2d 700, 707 (N.D. Ill. 2002) ("the defense of qualified immunity only applies to officials acting within the scope of their discretionary authority"). "Once this is shown, the plaintiff must prove that the official's conduct violated clearly established law." *Pyka*, 906 F. Supp. at 1216. This requirement breaks down into two parts. "First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right." *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020). "Second, that right must have been clearly established at the time of the violation." *Id.* (citing *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (U.S. 2015) (internal quotation marks and citation omitted). "When attempting to defeat an assertion of qualified immunity, the burden is on the plaintiffs to show that a particular right is 'clearly established.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). "[T]o do so the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005); see also *Leiser v. Kloth*, 933 F.3d 696, 702 (7th Cir. 2019).

The City Defendants assert that they "were engaging in the discretionary function of determining whether and on what basis to accept or reject various objector petitions." [40] at 12. However, it is not apparent from the complaint or from the City Defendants' recitation of the facts what level of discretion, if any, Vega had to accept or reject objections. It may be that Vega was required to accept *all* timely objections; or it may be that she was supposed to apply some other

criteria in evaluating objections; or it may be that Vega was allowed to do whatever she wanted, as the alleged quote from Somer suggests. But there is no way for the Court to determine the scope of Vega's authority from the materials provided. Thus, it is not clear whether qualified immunity shields Vega's refusal to accept Ghiles' and Daniel's objections from challenge in this lawsuit.

Nonetheless, the Court concludes that Plaintiffs have failed to state a claim for violation of due process for a more fundamental reason: Plaintiffs have not identified, and the Court has been unable to locate, any precedent establishing that the filing of an objection to a candidate implicates a property or liberty interest, which is required to state a claim for violation of either procedural or substantive due process. See *Ores v. Village of Dolton*, 152 F. Supp. 3d 1069, 1078 (N.D. Ill. 2015) (procedural due process); *Zummo v. City of Chicago*, 345 F. Supp. 3d 995, 1005 (N.D. Ill. 2018) (substantive due process). Therefore, the Court grants the City Defendants' motion to dismiss Plaintiffs' due process claim to the extent it is based on Vegas' rejection of their objections.

### 5. Equal Protection

As with the due process claim, the Court limits its analysis of the equal protection claim to Ghiles' and Daniel's allegations that Vega (in coordination with Gonzalez, Wilcox, and Somer) refused to accept their objections to candidates in the April 2019 election. As the City Defendants recognize, see [40] at 9, a plaintiff may proceed on a "class of one" equal protection claim by alleging facts that plausibly suggest "(1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." *Fares Pawn, LLC v. Indiana Dep't of Fin. Institutions*, 755 F.3d 839, 845 (7th Cir. 2014).[4]

---

[4] "What is less clear is whether a class-of-one plaintiff must also allege, and ultimately prove, that the government officials acted with some kind of bad motive not grounded in their public duties." *Id.* (explaining that "[i]n *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc), this court divided over that question, leaving no controlling opinion"). Plaintiffs here allege a bad motive not grounded in public duties—namely, keeping all non-Unity Party candidates off the ballot to protect Unity Party officeholders' jobs.

The City Defendants argue that Ghiles and Daniel cannot state class-of-one equal protection claims because the facts alleged in the complaint establish that there was a rational basis for the City Defendants' "alleged decision to reject Petitioners' objector petitions while accepting other citizens' objector petitions." [40] at 9. The City Defendants compare Ghiles and Daniel to another objector, Manual, whose objections also were rejected by Vega until Manual called her attorney, at which point Vega accepted the objections. Confusingly, Defendants contend that "[t]he reasonable inference here is that Ms. Manual's alleged call to her attorney prompted Deputy Clerk Vega to accept … her objector petition," but Ghiles and Daniel "do not allege that [they] engaged in such conduct." [40] at 9. While the City Defendants have identified a *difference* between Ghiles and Daniel, on the one hand, and Manual, on the other hand, they fail to convince the Court that this provides a *rational* basis for the differential treatment. Unsurprisingly, they cite no case law suggesting that it is rational for a clerk to refuse to help a member of the public unless and until she calls an attorney. Compare *Better Broadview Party v. Walters*, 159 F. Supp. 3d 885, 894-95 (N.D. Ill. 2016) (allegations by political party and its candidates that village clerk initially denied candidates' nomination papers for consolidated election of village trustees on ground that they were too early, then, when they attempted to file them on date clerk had indicated, clerk rejected them as untimely, that clerk belonged to opposing party, that clerk refused to certify candidates' names to ballot with phrase "objection pending" appended to their names, that clerk accepted objection to candidates' nomination after rejecting their papers, and that clerk failed to comply with statutory deadline for holding hearing regarding objection to nominations were sufficient to state plausible claim for violation of their equal protection rights); *Cichowski v. Sauk County*, 409 F. Supp. 2d 1098, 1103 (W.D. Wis. 2006) (plaintiffs stated an equal protection claim against clerk of county circuit court based on allegations that clerk singled them out for poor

service in the clerk's office in making them wait longer, refusing to file their documents and directing them to a window displaying the phrase "ashes of our difficult clients" because of their nationality).

Further, Manual is not the only comparator. Vega (or at least the clerk's office) accepted objections from other individuals—including the objections that resulted in the removal of Ghiles and Daniel from the April 2019 ballot. The City Defendants identify no rational reason why those objections were accepted while Ghiles' and Daniel's were not. Moreover, "it is not always necessary to find a similarly situated person" in order to state a class-of-one equal protection claim. *Frederickson v. Landeros*, 943 F.3d 1054, 1062 (7th Cir. 2019). "If animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual." *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013). Here, Ghiles' and Daniel's theory is that the City Defendants held animus against them because they are not members of the Unity Party and sought to use their objections to have members of the Unity Party—including Mayor Gonzalez—removed from the ballot.

The City Defendants also claim that the complaint identifies a rational basis for rejecting Ghiles' objector petition, namely that it "left out/misspelled his name." [40] at 9-10 (citing [1] at 8). According to the City Defendants, it was rational to reject Ghiles' objections, while accepting objections from another objector who misspelled a mayoral candidate's name, because the objections contained different errors (misspelling of objector vs. misspelling of candidate being objected to). Again, the City Defendants have identified a *difference* between Ghiles and another objector, but fail to explain why it was *rational* to be hyper-technical in assessing one objection but not another. Further, in his response brief, Ghiles denies that his objections were refused "due to misspelling and other errors," and alleges instead that he was told that his and Daniel's

"objections were in the wrong format," which according to Ghiles is not a legal or valid basis for rejecting objections. [55] at 3. Cf. *Towns*, 786 F. Supp. at 701–02 (holding that plaintiff had a likelihood of success on due process claim asserting that there was no rational basis for electoral board's decision to remove him from ballot for state's attorney for not expressly stating on statement of interest that he was an attorney and incorrectly stating he was a candidate for "election" rather than "nomination" because "[t]o the extent [the plaintiff's] Statement of Candidacy is ambiguous and properly found to not be in substantial compliance with the law, it is not rational to remove him from the ballot when the Statement can be clarified to expressly state he is running for nomination in the primary and that he is a licensed attorney," but denying temporary restraining order because that claim was likely barred by res judicata).

While Ghiles and Daniel have stated a claim for violation of equal protection, the Court still must consider whether the City Defendants are entitled to qualified immunity. Without addressing equal protection directly, the City Defendants argue that they are entitled to qualified immunity on Plaintiffs' constitutional claims because this is "no clearly established constitutional right to have one's objections to a candidate's nomination accepted by a public official," and Vega and Somer "were engaging in the discretionary function of determining whether and on what basis to accept or reject various objector petitions." [40] at 12.

The parties have not provided the Court with sufficient analysis of this issue to allow the Court to reach a conclusion on qualified immunity at this early stage in the case. It is not inconceivable that a municipal clerk's rejection of a timely objection to a candidate for local office solely on the basis that the clerk seeks to protect members of one party from challenge by members of the public could rise to the level of an "obvious violation" of the Equal Protection Clause. *Lunini*, 395 F.3d at 769. But the Court is not prepared to reach that conclusion at this juncture,

given the lack of information in the record concerning the criteria (if any) that the clerk is supposed to apply in accepting or rejecting objections, as well as the complete lack of discussion of analogous case law in the parties' briefs. The Court therefore directs the City Defendants, and Ghiles and Daniel to the extent they are able as pro se litigants, to submit supplemental briefs by March 24, 2020 addressing the following questions:

> 1) What authority, if any does the City Clerk have to reject timely objections to candidates for local election? What criteria, if any, is the City Clerk required to apply in accepting or rejecting objections?

> 2) Is the City Clerk's decision to reject objections subject to review by the City's Electoral Board?

> 3) Are there any factually similar cases in which qualified immunity has been found to bar an equal protection claim, or in which it was determined that the right to equal protection had not been violated?

> 4) Should a municipal clerk's rejection of a timely objection for no reason other than to eliminate challenges to candidates from one political party be considered an "obvious violation" of equal protection?

## IV.    Conclusion

For these reasons, motions to dismiss [11], [18], and [37] are granted and motion to dismiss [40] is granted in part and denied in part. The parties shall be given until March 24, 2020 to address the questions above concerning whether Gonzalez, Vega, Wilcox, and Somer are entitled to qualified immunity on Ghiles' and Daniel's equal protection claim to the extent that claim is based on the rejection of Ghiles' and Daniel's objections to candidates in the April 2019 election. All other parties and claims are dismissed. This case will be set for status hearing after the Court receives the parties' supplemental briefs. No answers to the complaint will be required until further order of the Court.

Dated: February 26, 2020

Robert M. Dow, Jr.
United States District Judge