IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEBASTIAN C. GHILES; JOHN DANIEL, JR. </br></br> Plaintiffs, </br></br> v. </br></br> MUNICIPAL ELECTORAL BOARD COMMISSIONERS OF CHICAGO HEIGHTS, IL, et al., </br></br> Defendants. | Case No. 1:19-cv-01775 </br></br> Judge Robert M. Dow, Jr. |

**ORDER**

This action arises from alleged violations of the Equal Protection Clause of the United States Constitution by the Municipal Electoral Board/Commissioners of the City of Chicago Heights, Illinois and various municipal, county, and state officials during the City of Chicago Heights' local elections in April 2019. Plaintiffs Sebastian Ghiles and John Daniel, Jr. ("Plaintiffs") are proceeding *pro se* against the Board and several remaining named defendants: City of Chicago Heights Mayor David A. Gonzalez ("Mayor Gonzalez"), City of Chicago Heights Clerk Lori Wilcox ("Clerk Wilcox"), City of Chicago Heights Deputy Clerk Rachel Vega ("Deputy Clerk Vega"), and City of Chicago Heights Corporation Counsel Thomas J. Somer ("Somer") (collectively "Defendants").[1] In a prior Memorandum Opinion and Order ("Order"), the Court reserved ruling on the issue of whether Defendants are entitled to a qualified immunity defense and granted leave to file a Supplemental Response to address four specific questions designed to resolve this issue [64]. After reviewing the Supplemental Response, the

---

[1] On February 26, 2020, the Court granted several motions to dismiss [11], [18], [37], and part of a fourth motion to dismiss [40], as to some originally named defendants and entered a judgment terminating them as parties to this action [64].

Court concludes that Defendants have failed to carry their burden of establishing the existence of the qualified immunity defense at this point in the proceedings. Defendants' motion [40] therefore is denied.

I.      **Background**

In its prior Memorandum Order and Opinion, the Court determined that Plaintiffs' complaint states plausible claims alleging violation of their equal protection rights. See Memorandum Opinion and Order [64 at 23]. However, as to Defendants qualified immunity defense, the Court found that "[t]he parties [had] not provided the Court with sufficient analysis of this issue to allow the Court to reach a conclusion." [*Id*.] The Court then asked the parties to respond to [the following] four questions in a supplemental brief:

1. What authority, if any, does the City clerk have to reject timely objections to candidates for local election? What criteria, if any, is the City Clerk required to apply in accepting or rejecting objections?
2. Is the City Clerk's decision to reject objections subject to review by the Electoral Board?
3. Are there any factually similar cases in which qualified immunity has been found to bar an equal protection claim, or in which it was deemed that the right to equal protection had not been violated?
4. Should a municipal clerk's rejection of a timely objection for no reason other than to eliminate challenges to candidates from one political party be considered an "obvious violation of equal protection"?

[*Id*. at 24.] Responses to these questions were designed to allow the Court to determine whether Defendants' rejection of Plaintiffs' political objection petitions is entitled to qualified immunity. To place the qualified immunity analysis in context, the Court draws the rest of the factual background from the allegations of the complaint, which are presumed to be true at this stage of the case. Plaintiffs are residents of the City of Chicago Heights ("City").[2] Their complaint arises out of alleged corruption in the City's municipal elections on April 2, 2019, and the time-period

---

[2] See Memorandum Opinion and Order [64 at pp. 2-5] (discussing the political party affiliation conflict underlying this action).

2

that led-up to those elections. Both Plaintiffs previously ran unsuccessfully for local offices as non-Unity Party members. In 2019, Plaintiff Ghiles wanted to be a candidate for Mayor, but he was ultimately removed from the ballot after objections were filed to his candidacy. Plaintiff Daniel sought to for Alderman of the 7th Ward in the same year, but his name was removed from the ballot based on objections. See [1].

On December 3, 2018—the last day for the City of Chicago Heights' City Clerk's office ("Clerk's Office") to accept objections to candidates for the April 2019 election—Plaintiffs Ghiles and Daniel appeared in the Clerk's Office around 4:30 p.m. to present objections to various candidates in the Unity Party. Plaintiff Ghiles sought to file objections challenging Defendant Gonzalez's candidacy for Mayor and Defendant Wilcox's candidacy for City Clerk. Plaintiff Daniel sought to file an objection to Defendant Kelli Merrick's candidacy for Alderman of the 7th Ward. [See 1 at 6.]

Defendant Wilcox saw Plaintiffs at the Clerk's Office Counter seeking to file their objections, but she avoided acknowledging them and did not come to the counter to help them, even after Daniel tried to speak to her. [*Id*. at 7.] A few minutes later, Defendant Vega came to the counter and inquired if she could help. Plaintiffs Ghiles and Daniel stated that they were there to file objections to the candidacies of Mayor Gonzalez, City Clerk Lori Wilcox, and Alderman Kelli Merrick. After Plaintiff Ghiles put his objection on the counter, Defendant Vega looked at it and "said that she would not accept Ghiles' and Daniel's objections." [*Id*.]

Denise Manual, another individual standing in line at the Clerk's Office counter between Plaintiffs Ghiles and Daniel also had an objection to file. Defendant Vega initially rejected Manual's objection as well, but after Manual called her attorney, Defendant Vega accepted the objection. When Plaintiff Daniel reached the counter, Vega declined to accept his objection after

3

looking at it and summoned Defendant Somer, who – without reviewing the objections – informed Plaintiffs that "whatever Ms. Vega said goes." [*Id.*] at p. 8. The next day, December 4, 2018, Vega *accepted* a *late-filed* objection from "Mr. Wiggins" challenging mayoral candidate Joshua Deabel and the candidate running for 4th Ward Alderman. [*Id.*].

**II.     Legal Standard**

To successfully assert a qualified immunity defense, "[t]he defendant must first show that he or she was acting within the scope of discretionary authority at the time of the alleged conduct." *Pyka v. Village of Orland Park*, 906 F. Supp. 1196, 1216 (N.D. Ill. 1995); see also *Mearday v. City of Chicago*, 196 F. Supp. 2d 700, 707 (N.D. Ill. 2002) ("the defense of qualified immunity only applies to officials acting within the scope of their discretionary authority"). To satisfy this burden, an official must assert plausible facts establishing that the complained of actions or omissions fell within the scope of discretion legally authorized for the official's duties.

"Once this is shown, the plaintiff must prove that the official's conduct violated clearly established law." *Pyka*, 906 F. Supp. at 1216. This requirement breaks down into two parts. "First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right." *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020). "Second, that right must have been clearly established at the time of the violation." *Id*. (citing *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). "When attempting to defeat an assertion of qualified immunity, the burden is on the plaintiffs to show that a particular right is 'clearly established.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). "[T]o do so[,] the plaintiff must demonstrate either that a court

4

has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005); see also *Leiser v. Kloth*, 933 F.3d 696, 702 (7th Cir. 2019).

## III. Analysis

By asserting a qualified immunity defense, Defendants neither contest nor concede the validity of Plaintiffs' claims on the merits. Instead, Defendants submit that they cannot be held liable for a Fourteenth Amendment violation of the Equal Protection Clause because their actions fell within the scope of their official duties and the discretionary authority needed to review and collect written objections to political candidates from the public and did not violate clearly established law.

Resolution of the threshold question necessary to establish entitlement to qualified immunity requires Defendants to satisfy their burden of establishing that their rejection of the Plaintiffs' objection petitions was a discretionary act that fell within the authority conferred on them as City of Chicago Heights election officials, pursuant to the Illinois Election Code,10 ILCS 5/10-8. The Defendants' written submissions [40, 72] do not satisfy their threshold burden at step one, at least not at this stage of the proceedings. Thus, the Court need not reach the second question of whether their conduct violated clearly established law.[3]

The relevant statutory provision of the Illinois Election Code ("IEC") regarding the filing of objections to candidate nominations, states:

> Any legal voter of the political subdivision or district in which the candidate or public question is to be voted on …having objections to any certificate of nomination or nomination papers or petitions filed, shall file an objector's petition together with 2 copies thereof in the principal office of the election authority or local election official with whom the certificate of nomination, nominations papers or petitions are on file. Objection

---

[3] Only after the defendant demonstrates he or she was acting within the scope of discretionary authority must the plaintiff "prove that the official's conduct violated clearly established law." *Pyka*, 906 F. Supp. at 1216.

5

petitions that do not include 2 copies thereof, shall not be accepted. 10 ILCS 5/10-8. The Election Code defines a "local election official" as "the clerk … of a unit of local government." *Id*. at 5/1-3(1); see also 65 ILCS 5/3.1-35-95(a) (a "deputy clerk may execute all documents required by law to be executed by the municipal clerk"). Illinois courts addressing this provision of the IEC have held that it is "the clerk's duty 'to determine whether, upon the face of the petition, it is in compliance with the law.'" See, *e.g., Haymore v. Orr*, 385 Ill.App.3d 915, 918 (1st Dist. 2008) (citing *People ex rel. Giese v. Dillon*, 266 Ill. 272, 275-76 (1914)).

The Illinois Election Code does not confer general authority to reject objection petitions. In pertinent part, the Election Code provides that "certificates of nomination and nomination papers, and petitions to submit public questions to a referendum, being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid" *unless they are untimely filed*. 10 ILCS 5/10-8. [40] at 9-10 (citing [1 at 8]). The IEC "[§] 10-8 clearly codifies two conditions precedent for an objection to be considered "valid": the nomination papers must be (1) filed as required by the Code; and (2) in "apparent conformity with the provisions of the Election Code." *Druck v. Illinois State Board of Elections*, 387 Ill. App. 3d 144, 155 (1st Dist. 2008). The IEC also states, in relevant part, that "[o]bjection petitions that do not include 2 copies thereof, shall not be accepted." See, *e.g.,* 10 ILCS 5/10-8.

A plain reading of this statute leads to the conclusion that objection petitions filed against political candidates running for public office—unlike certificates of nomination, nomination papers, and petitions to submit public questions to a referendum—may only be deemed invalid if 2 copies are not submitted. This "2-copies" defect, as expressed in the Code with singular particularity, signals that the Illinois legislature did not intend to confer much, if *any,* discretion,

6

beyond facial non-conformity such as this specific "2-copy" defect.

Defendants read the IEC more broadly than the Court and argue that the scope of discretionary authority conferred by the IEC encompasses rejection of all objections that do not facially appear to conform with the IEC's requirements (*e.g.*, an "apparent conformity" standard). See *Jenkins v. McIlvain*, 338 Ill. App.3d 113, 117 (1st Dist. 2003). In adopting this view, the Defendants necessarily acknowledge that "a clerk's authority to reject a document is limited" to determination of whether it facially complies with the IEC (not whether its substance is objectionable), yet they contend that an "election official does more than simply file stamp and distribute objection papers." [72 at 7]. To support this view and their qualified immunity defense the Defendants point to the following IEC provisions and make several factual claims that are not supported by the pleadings or any other evidence submitted with their Supplemental Response.

Defendant begins by arguing that, as a local election official, Deputy Clerk Vega is entitled to qualified immunity because "a city clerk operates within the scope of her [discretionary] authority when she rejects an election filing pursuant to the Illinois Election Code." See [72] at 6-7 (citing 10 ILCS 5/10-8). Defendants first point is that when Deputy Clerk Vega rejected the Plaintiffs' political objection petitions, on December 3, 2018, she acted reasonably because, Plaintiffs' objections because they "were in the wrong format." [72 at 8], (citing [1], p. 7 ¶ R; [55], p. 3, ¶ 3); and Daniel's objection petition "left out/misspelled his name" [40 at 9-10] (citing [1], at 8). Defendants add that Deputy Clerk Vega also consulted with Defendant Somer before acting. [72, at 8].

These arguments are not persuasive and not based on the allegations in the complaint or any evidence other than the assertions contained in the Supplemental Response [72]. The Court also notes that Defendants do not assert any specific reason given for rejecting Plaintiff Ghiles'

7

petition objecting to the candidacies of Mayor Gonzalez or City Clerk Lori Wilcox – both of whom remain named defendants seeking qualified immunity for Deputy Clerk Vega's actions. Defendants also do not assert that Deputy Clerk Vega rejected the objection petitions with instructions to amend them to cure the (unspecified) non-conforming feature(s) before they could be filed. In fact, the Complaint alleges that Defendants offered no reasons for rejecting the objections when they were at the clerk's office window on December 3, 2018 – not even the general ground that they did not conform with the IEC's requirements. The Court must accept as true Plaintiffs' allegations that Defendants did not express either of these two reasons while they stood at the clerk's office window seeking to file their objections. [1].

To support their assertion that the rejection fell within the scope of Deputy Clerk Vega's discretion as a city election official, Defendants do cite to Illinois decisions in which courts found that a city clerk had authority to reject nomination papers for failure to include the required statement of candidacy;[4] or a city clerk had discretion to withdraw certification of plaintiff's question from the ballot where petition was "facially deficient" because it did not include required number of signatures."[5] [72 at 8.] Based on these cases Defendants contend that "[a] fair reading of Plaintiffs' allegations suggests that Deputy Clerk Vega acted as a 'gatekeeper' to turn away Plaintiffs' objections, because they did not conform with the law" and that decision was reasonably within the scope of her authority . . . as a local election official" [*Id.*]

The Court does not find these arguments persuasive. An election official's discretion is limited to rejection of objection petitions based on facially apparent non-conformity with the election code or legal defects that are obvious on the face of the petition (*e.g.,* a petition supported

---

[4] See*, e.g., North v. Hinkle*, 295 Ill. App.3d 84, 88-89 (2nd Dist. 1998).
[5] See*, e.g., Haymore*, 385 Ill. App.3d at 919.

8

by fewer signatures than the number required; or the failure of a potential candidate to attach a statement of candidacy nomination papers). If Plaintiff Daniel's objection petition contained a typographical error or minor omission regarding his name, why could it not be cured immediately, while he was standing at the clerk's office window when Defendants Vega and Sommers discovered the apparent non-conforming error? Typographical errors can be cured by informing petitioner of the defect and directing amendment before filing. While some defects are more substantive (*i.e.*, missing signatures, or the lack of a statement of candidacy) and may require some time to amend, the only specific defect alleged pertained to Daniel's petition and that could have been cured on the spot. Because the reasons asserted by Defendants appear to be curable at the time of submission, the Court finds that they do not provide a plausible legal basis for the Defendants' claim that their outright rejections of Plaintiff's objection petitions were authorized and fell within the scope of their official discretion.

The facts, as pled, also show that Defendants could have – but did not – reject an untimely objection that a non-party attempted *the day after rejecting the timely submitted objections* that Ghiles and Daniel sought to file against Unity Party candidates. This fact undermines the Defendants' argument that they rejected Plaintiffs' objections based on lack of apparent conformity and raises a reasonable inference that there may have been some other reason for the rejections. Whatever this reason may have been, it has not yet been asserted or established in this record at this stage of the proceedings.[6]

In sum, it is not reasonable to infer or to conclude that the IEC confers discretion to election officials to reject a petition for a typographical error or minor omission that can be cured

---

[6] If, after the close of discovery, Defendants have evidence supporting a plausible legal basis for rejection of the Plaintiffs' objections, then they are free to raise a qualified immunity defense in a motion for summary judgment, pursuant to Fed. R. Civ. P. 56.

9

before filing. In addition, the Court cannot find that the asserted non-conforming features of Plaintiffs' objection petitions rose to the level of a non-curable deficiency warranting the rejection and return of the petition to the petitioner. None of the cases cited by Defendants supports such a result; instead, the cases cited indicate that election officials are given discretion to permit rejection of petitions that need to be amended in a more substantive way (*e.g.*, obtaining the requisite number of signatures).[7]

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [40] based on a qualified immunity defense is denied. This case is set for a telephonic status hearing on April 8, 2022 at 9:30 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

Dated: March 18, 2022

Robert M. Dow, Jr.
United States District Judge

---

[7] See cases cited and discussed *supra* pp. 7-8.